## YOUNG v. ANTHONY.

(Supreme Court, Appellate Division, Fourth Department. May 1, 1907.)

1. MONEY LENT—PERSONS LIABLE—SUFFICIENCY OF EVIDENCE.

Evidence in an action for money loaned *held* insufficient to sustain a finding that the money was loaned to plaintiff, and not to a third person.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Money Lent, § 13.]

2. APPEAL—THEORY OF CASE BELOW.

The case having been tried and submitted on the theory of money lent by plaintiff's intestate to defendant, the verdict for plaintiff cannot be sustained on the claim that defendant was acting as intestate's agent in making the loan to a third person, and failed to account for the notes received therefor for intestate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3406.]

3. PRINCIPAL AND AGENT—EVIDENCE OF AGENCY.

Where, in an action on the theory of money lent by plaintiff's intestate to defendant, defendant claims he was merely agent of intestate for making the loan to a third person, he may show, as tending to confirm his claim, that, for a number of years prior to death of intestate, defendant had assisted him from time to time, had called on deceased frequently at his home, and had done favors for him at his request.

4. GIFTS—EVIDENCE.

As tending to confirm defendant's claim, in an action for money lent, that plaintiff's intestate gave the money to defendant, he may show that he was the favored nephew of deceased and had done deceased many favors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, § 153.]

Spring and Robson, JJ., dissenting.

Appeal from Trial Term, Onondaga County.

Action by Catherine Young, administratrix of John Young, deceased, against Jacob M. Anthony. From a judgment for plaintiff on a verdict, and from an order denying a motion for a new trial on the ground of newly discovered evidence, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

O. M. Reilly, for appellant.

James S. Thorn, for respondent.

WILLIAMS, J. The judgment and order should be reversed, with costs to the appellant to abide event.

The action was brought to recover money alleged to have been loaned by plaintiff's intestate to the defendant. The deceased died July 18, 1903, at the age of 86 years, 7 months. He left his wife and one daughter by a former marriage. The defendant was his nephew. The money alleged to have been loaned defendant was advanced May 15, 1903, upon a check directing the "Trust & Deposit Co.," of Syracuse, N. Y., to pay to the defendant, or order, $4,000, signed by deceased, and indorsed by the payee to C. F. Williams, or order. This money was concededly used to pay Williams for the construction of a building for the "Caughdenoy Creamery Company," of which the defendant was the president. The questions of fact litigated were: (1) Whether this advance of money constituted a loan to the defendant, or to the creamery company; (2) whether at the time the advance was made, or thereafter and prior to the death of deceased, the money or the indebtedness of the creamery Company was given to the defendant. There was, of course, difficulty on the part of the defendant in showing the real nature of the transactions between defendant and deceased, by reason of the incompetency of the defendant as a witness to testify to what took place between them. The check was turned over to Williams and he received the money thereon.

As to the first question above suggested, Frank Wiley, the secretary of the creamery company, was a witness for the plaintiff on the trial, and testified, among other things, that defendant told him he could get the money of deceased to pay for the building, and that he was willing to advance the money, provided defendant would do the business for him. Wiley further testified that the creamery company was to give notes for the money advanced, and did give them to defendant. The notes were not produced on the trial, and it did not appear whether they were made payable to defendant or deceased. Wiley further testified as follows:

"I did understand that the loan was to be made to the creamery company, and that that was the only condition attached—that he (Anthony, defendant) should be permitted to do the business for the man who furnished the money. That is the way I understood it. That was practically the conversation. * * * That is about the time that the money was paid or shortly before that."

Rice, who worked deceased's farm, was also a witness produced by the plaintiff, and he testified to a conversation between deceased

and defendant about going to the city and getting the money to pay the creamery company's indebtedness; that defendant said he would get a mortgage, and deceased said that would be good enough.

Upon this evidence, which was substantially all that bore upon this question, it would seem that the jury should have concluded that the original transaction was a loan of the money to the creamery company, the defendant to transact the business for deceased, and not a loan to defendant himself. But they must have concluded that the loan was to defendant, and not the creamery company, because the court charged, in answer to requests of counsel, that there could be no recovery if the advance of the money by the deceased was a loan to the creamery company, and there could be no recovery if the deceased knew, when he advanced the money, that it was to be turned over to Williams to pay for the construction of the building of the creamery company. The plaintiff had the burden of proof as to this issue. There seems to be no doubt but deceased understood the money was to be furnished to pay for the construction of the creamery company's building, and we fail to see how it was satisfactorily shown that the loan was not to the creamery company, defendant to do the business for deceased, but was a loan to defendant personally, he alone being liable to deceased.

The form of the check would not aid much in determining the question, because it may well have been payable to defendant's order, whether the loan was to the creamery company or to himself. The check having come into defendant's hands, it was at once indorsed over to Williams to pay for the creamery company building, and Williams received the money. The creamery company gave notes for the money, but to whose order payable does not appear. The plaintiff could have proved how this was, but did not see fit to do so. If they had been payable to the order of deceased, that fact would have been quite important as bearing upon the issue we are considering. If they had been given payable to the order of defendant, that fact would not necessarily show that the loan was to him, and not to the creamery company, because he may have taken them in that form through doing the business for the deceased and making the loan for him to the creamery company. Certainly, if any force is to be given to the testimony of the secretary of the creamery company as to defendant's statements at or about the time the money was advanced, they would seem to show the loan was to the creamery company, and not to the defendant personally. And it will be remembered this evidence as to the statements of defendant was given by the plaintiff. It would not have been competent as coming from the defendant.

It will not answer to charge the defendant with this $4,000 merely because he received the check and has not accounted for the money. If he was acting as agent for the deceased, and has not accounted for the notes received for his principal, he can be made to do so; but the case was not tried or submitted to the jury upon this theory, and this verdict cannot be upheld upon such a claim now. The court made the right to a verdict to depend on a finding that the loan was to the defendant, and not to the creamery company. Upon this theory we regard the verdict as contrary to the evidence given on this trial.

In view of these suggestions, there is not much occasion for considering the second question suggested—whether there was a gift by deceased to defendant. This question would only be important if the loan was made to the defendant. He might then attempt to defeat a recovery by claiming a gift. If, however, the loan was to the creamery company, no recovery could be had against the defendant, whether there was a gift or not.

If we are wrong in these suggestions, and the question as to whom the loan was originally made was for the jury, and the question of a gift was also for the jury, then it must be said that the court erroneously excluded evidence offered by the defendant bearing upon these subjects. The offer was to show that for a number of years prior to the death of deceased, the defendant had assisted him from time to time; that he had called upon him very frequently at his home, and had done favors for him at his request. This evidence would tend to show that defendant would very likely do this business for deceased, and would thus tend to confirm defendant's claim that the loan was not to him, but to the creamery company; defendant doing the business for deceased, as his agent. It would also tend to confirm defendant's claim that there was a gift; he being the favored nephew of deceased, and one who had done deceased many favors, and thus entitled himself to consideration in the disposition of his property. Certainly, in view of what we have said, the motion for a new trial on account of newly discovered evidence was entitled to serious consideration.

There should be a new trial, and very likely the facts will be more fully developed, and the rights of the parties can then be more satisfactorily determined.

It is unnecessary to discuss the appeal from the order denying the motion for a new trial on the ground of newly discovered evidence. That order should be reversed.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event.

McLENNAN, P. J., and KRUSE, J., concur in result.

SPRING, J. (dissenting). I think the verdict is sustained by the evidence. The decedent on the 15th day of May, 1903, gave his check for $4,000 to the order of the defendant, who indorsed it over to a creditor of the creamery company, of which the defendant was president. The evidence does tend to show that Mr. Young originally intended to loan the money to the creamery company, accepting a mortgage as security for that indebtedness. The defendant had charge of the business, and did not make a loan for Young to the company. Wiley, the secretary of the company, in narrating the transaction with the defendant, testified:

"The fact was that we were to give him notes. That is all he asked me for, and if my memory serves me correctly we gave him notes for the full amount of the $4,000 and some other bills that he had paid. At our meeting at the time that this business was done, Mr. Anthony talked with me about it, and he said that all he would ask of the creamery company was to give him their notes for security. I don't remember that anything further was said. It was

said for the full amount. Mr. Anthony said it. He said we could give him notes for the amount of the money that he had got for us to pay our indebtedness. The original amount was $4,000. There were some other matters besides that."

This transaction was more than two months before Mr. Young died, and there is no suggestion that the note for $4,000 was payable to him, or that it was ever delivered to him. Whatever, therefore, may have been the original purpose about the mortgage, the defendant has ended that defense, although submitted to the jury, by individually accepting the note of the company for the money, and never transferring it to the plaintiff or Young, and not producing it on the trial, and there is no pretense that the company ever gave any mortgage. The administratrix is friendly to the defendant and a witness in his behalf. If the note had been delivered by the defendant to her husband, it would have been in her custody. The defendant was a competent witness to dispute the testimony of Wiley as to the giving of the note. He was a witness in his own behalf, narrating certain transactions with Wiley and pertaining to the creamery company, but abstained from any reference to these notes.

His position on the trial was that no loan to any one was made by the old gentleman, but the $4,000 were given to him. The administratrix was a witness for him on this subject, and not as to whether the security taken belonged to her husband. The testimony of Wiley that the defendant told him he was acting for Mr. Young is contradicted by the defendant. The evidence accordingly is undisputed that the defendant accepted a note or notes for more than $4,000 of the creamery company; that these notes represented the debt of Williams for constructing the company building and other obligations which the defendant had paid; that the note or notes were delivered over to the defendant and retained by him, or at least were never transferred to Mr. Young. It is claimed that Wiley did not testify to whose order these notes were payable. He said the notes were given to the defendant and that the defendant wanted them given to him. Language could not be plainer. This is especially decisive in view of the fact that the defendant did not produce the notes, did not contradict Wiley, and claimed as his defense on the trial that Mr. Young in his tottering old age absolutely made the defendant a present of this large sum of money. There is nothing in the relation of these people to warrant the inference that Mr. Young diverted $4,000 of his estate from his only child and gave it to the defendant, and there is no necessity for straining to aid the accomplishment of any such purpose.

There is abundant evidence to sustain the verdict of the jury that this money was loaned to the defendant. This proposition was fairly submitted. There is only one exception calling for attention. Upon the direct examination of Mrs. Young the plaintiff's counsel made this offer:

"I offer to show that for a number of years prior to the death of John Young, plaintiff's intestate, that the defendant in this action had assisted from time to time his uncle, John Young."

If the evidence hinted at in the offer was competent at all, it was because it bore somewhat upon the probability of the gift. Counsel saw fit to embody his proposed evidence in an offer, and the offer must be definite and unambiguous. Daniels v. Patterson, 3 N. Y. 47–51; Hellreigel v. Manning, 97 N. Y. 56–60, 61. The offer was not sufficiently specific. Whether the defendant "assisted" Young was unimportant. In order to make the evidence material, it should appear that the assistance was rendered gratuitously. The offer, which must be assumed to include all the defendant could prove, simply ends with the proposition that the defendant did favors for and assisted the old gentleman. The character of the assistance and the favors, their extent, and whether performed with the expectation of payment, or whether in fact paid for, are not embodied in the offer, and these various omissions may have induced the court to exclude the evidence.

The judgment should be affirmed, with costs.

ROBSON, J., concurs.